IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINA JONES,            )
                            )
            Plaintiff       )
                            )  Civil Action No.: 07 C 4612
    v.                      )
                            )  Suzanne B. Conlon, Judge
CRAIG CLARK, *et al.*,      )
                            )
            Defendants.     )
                            )
                            )

**MEMORANDUM OPINION AND ORDER**

A jury found Braidwood police officers Craig Clark and Donn Kaminski unreasonably detained and falsely arrested Christina Jones, a Commonwealth Edison employee, while she was reading electricity meters. In addition, the jury concluded that the two police officers and the City of Braidwood were liable for maliciously prosecuting Jones. The verdict included an award of $50,000 in compensatory damages, and punitive damage awards of $100 against Clark and $8,400 against Kaminski. Two claims arise under 42 U.S.C. § 1983, and the court exercises supplemental jurisdiction over the state law malicious prosecution claim. Defendants timely renewed their unsuccessful trial motion for judgment as a matter of law or, alternatively, seek a new trial.

Defendants must show that the trial evidence was legally insufficient to support the jury's verdict. FED. R. CIV. P. 50; *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 422 (7th Cir. 2000). The court does not weigh evidence or make credibility determinations; that was the jury's function. *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011). Rather, the court is

1

obligated to view trial evidence and inferences in Jones' favor. Defendants fail to recognize this standard in their post-trial motion.

The trial evidence amplified the Seventh Circuit's discussion of the more limited record on defendants' interlocutory appeal. *See Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011) (affirming denial of summary judgment on the issue of qualified immunity). Viewing the trial record in Jones' favor, the evidence ". . . reveals nothing but a blatant and embarrassing abuse of police power." *Id.* at 685. The jury's verdict was reasonable and supported by the evidence.

**Unreasonableness of *Terry* Stop**

Jones parked her ComEd car in a Braidwood residential neighborhood in order to read electricity meters on foot. She was dressed in highly visible ComEd gear and carried a meter reader. She had two ComEd identification cards attached to her waist. She used binoculars to read meters inaccessible because of fencing or dogs. While she was walking across the street, Clark, who was in a marked police car, drove up and had a consensual and mutually courteous conversation. Clark told Jones that a neighbor had called the police to complain that a person "of color" was photographing houses on the block (Jones is African-American; Braidwood is a predominately white Chicago suburb). Clark observed that Jones was wearing ComEd work clothes. She voluntarily showed Clark her ComEd photo identification cards, one bearing her full name and the other her first name. She also voluntarily produced her binoculars, explaining the neighbor might have mistakenly believed she was using a camera.

Clark then asked for her driver's license and date of birth; she responded that her license was in her ComEd vehicle parked a few blocks away. Clark did not ask her to get her license. He returned her identification cards. Jones thought the conversation was over and began to walk

2

away, obviously feeling free to leave. At that point Clark stopped her, asking why she was in a hurry? Jones responded that she had 500 meters to read that day. Clark did not allow her to continue on her route, but instead asked again for her date of birth.

A reasonable jury could find that once Clark stopped Jones from continuing with her work, their encounter was no longer consensual and she was not free to leave. There was no reasonable basis for Clark to believe Jones was involved in any criminal activity. Reasonable suspicion requires a police officer to have specific and articulable facts that objectively point to possible involvement in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Jewett v. Anders*, 521 F.3d 818, 823–24 (7th Cir. 2008). A 911 caller reported a construction worker "of color" was taking photos of houses. Clark had no reasonable basis to believe Jones was doing anything but reading electricity meters, much less engaging in any illegal activity. Nor is using a camera to photograph homes a crime. *Jones*, 630 F.3d at 683. Jones was dressed from head to toe in ComEd work gear, she was carrying a ComEd electronic meter reader, she initially agreed to speak to Clark without hesitation, she voluntarily showed Clark her ComEd identification, and she gave a reasonable explanation for her presence in the area. Clark had even reported to the police department dispatcher that he had arrived at the scene and was with a ComEd worker.

Defendants argue Jones' refusal to give her date of birth was suspicious. A reasonable jury could credit Jones' testimony that she did not refuse to give Clark her birth date, but rather she questioned why it was necessary. Defendants failed to establish specific and articulable facts up to that point of the encounter that would compel a reasonable jury to find that Clark had a right to demand that Jones provide her date of birth. Unless a police officer has a reasonable

3

suspicion of criminal activity, a citizen is free to go about her business. *Florida v. Bostick*, 501 U.S. 429, 343–35 (1991).

## Probable cause for arrest

Jones took out her cell phone and told Clark she needed to call her supervisor; she offered to have her supervisor talk to Clark to confirm her identity and work assignment. As she turned away to make the call, Clark continued to ask for her date of birth. She did not attempt to leave, but continued trying to reach her supervisor and informed a ComEd co-worker that she had been delayed in reading meters because a policeman was questioning her. Kaminski, Clark's supervisor, arrived in response to the original dispatch about a construction worker taking photos. On his way, Kaminski spoke to another neighbor who stated that the person walking around the area was a ComEd worker who was reading meters and was not taking pictures. Kaminski relayed this conversation to the dispatcher. Kaminski also heard Clark report over the radio that he saw Jones reading meters, but that she had not provided the information he requested.

The situation quickly escalated upon Kaminski's arrival. He angrily confronted Jones, asking whether she had given Clark all the information he requested. Jones responded that she had complied by giving Clark her ComEd identification. Kaminski told her she had not complied. Jones responded that this was harassment. Kaminski told her she was going to jail, knocked the cell phone out of her hand and handcuffed her all within several minutes of his arrival. The police officers gave a conflicting version of these events. The jury was entitled to resolve credibility issues in Jones' favor. In a complaint signed by Clark, she was charged with obstructing a police officer under Illinois law. 720 ILCS 5/31-1.

Defendants argue Kaminski had probable cause to arrest Jones, even though the jury came to the contrary conclusion. Probable cause exists only if a police officer reasonably believes a crime had been or was being committed, based on the facts and circumstances known to him. *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). An officer may arrest a person for obstruction of a police officer if she does not comply with the Illinois stop and identify statute. 725 ILCS 5/107-14; *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 185 (2004); *Jones*, 630 F.3d at 684. However, the stop and identify statute applies only if an officer has reasonable suspicion that the person questioned is committing, is about to commit, or has committed an offense; then, the officer may demand that the person giver her name, address, and an explanation of her activities. 725 ILCS 5/107-14. The statute does not require a suspect to provide a date of birth. The jury could reasonably conclude that Kaminski did not have a reasonable belief that Jones had committed or was committing a crime because she did not promptly provide her date of birth to Clark. The record supports a reasonable inference that Jones' conduct did not obstruct Clark's investigation of a complaint that a construction worker was taking photographs of homes.

Defendants argue they had probable cause to arrest Jones for disorderly conduct. 720 ILCS 5/26-1(a). The record supports an inference that Kaminski did not reasonably believe Jones had or was engaged in disorderly conduct. There was no evidence that Jones engaged in conduct that alarmed or disturbed another and threatened to provoke a breach of the peace. *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993); *People v. Albert*, 611 N.E.2d 567, 570 (Ill. App. Ct. 1993). The record supports a reasonable inference that Kaminski unlawfully arrested Jones because he was angry when he arrived, she claimed she was being harassed and he did not like her attitude.

5

## Jury Instructions

Defendants contend the court erred by giving plaintiff's proposed instructions 1 and 3 because both used the word "involved" in the context of a police officer's reasonable suspicion of criminal activity in order to justify a *Terry* stop or for requesting a person's name and address. Defendants speculate that the use of "involved" "could have been, and likely was misinterpreted by the jury" as suggesting that Kaminski and Clark had to personally observe Jones engaged in criminal activity. Defendants' Memo., Dkt. No. 124 at 7. While there was extensive discussion of these instructions and defendants' alternative proposals, defendants did not assert an "involved" argument during the instructions conference, nor did they specifically object to use of the word "involved" or suggest another word as an alternative. *See* FED. R. CIV. P. 51 (grounds for objection to jury instruction must be stated distinctly); *Lewis v City of Chi. Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009) (unobjected-to jury instructions reviewed for plain error). Defendants' speculation the use of the term constituted the denial of a fair trial is unreasonable on its face. Nor do defendants cite any authority to support their conclusion that the jury was erroneously instructed. Defendants' argument that the court erred by refusing to give their proposed instruction 3 is also unsupported. The jury instructions, as a whole, correctly instructed the jury and informed them of both parties' theories of the case. Defendants have failed to establish grounds for a new trial under Federal Rule of Civil Procedure 59(a).

## Racial implications

Defendants complain the court erred by not granting their pretrial motion *in limine* to exclude testimony concerning race because Jones' race discrimination claims were dismissed. The motion was denied because it was conclusory and determination of relevancy issues required

the context of a trial. Defendants did not object at trial to testimony that Jones stated to the police officers at the time of her arrest that their action was discriminatory. She repeated her belief she was arrested for racial reasons in the booking room. Jones is African-American, the police officers are white, and the City of Braidwood is predominately white. Defendants waived this issue by not objecting on these grounds at trial. *Griffin v. Foley*, 542 F.3d 209, 218-19 (7th Cir. 2008); *Lewis v. City of Chicago*, 563 F. Supp. 2d 905, 922 (N.D. Ill. 2008) (Castillo, J.). Jones was precluded from seeking recovery for a race discrimination claim by summary judgment. However, race was relevant background information, and excluding it would not present an accurate picture of the incident to the jury. Jones accused the officers of harassing her because she was black in Braidwood; Kaminski explained his anger as resulting from being unjustly accused of racism. Racial *animus* was relevant and probative on issues of the police officers' intent with respect to claims under 42 U.S.C. § 1983 and the malicious prosecution claim under Illinois law. *See Mack v. First Security Bank of Chi.*, 511 N.E.2d 714, 504–05 (Ill. App. Ct. 1987) (evidence of racial prejudice relevant to alleged improper motive in malicious prosecution claim).

### Booking room videotape

Defendants' booking room procedures and conduct after Jones' arrest were automatically videotaped. Over defendants' objection, the video was received in evidence and roughly two to three minutes of the video were shown to the jury. Defendants argue that the video was cumulative because the sequence of events in the booking room was uncontested. However, the video impeached Kaminski's testimony that he did not observe Jones was wearing a ComEd cap and clothing, and objectively recorded Jones' obvious ComEd gear. The video also captured

Kaminski's angry behavior: in yelling at Jones while she was passively handcuffed and his removal of her cap, throwing it contemptuously on a nearby counter. Kaminski's abusive and unprofessional conduct was a central issue at trial. The police department videotape was telling, relevant evidence. Unlike the cases defendants cite, the video was not made in anticipation of litigation. *Cf. Foster v. Crawford Shipping Co.*, 496 F.2d 788 (3d Cir. 1974); *Carrasquillo v. City of Troy*, 251 F. App'x 688 (2d Cir. 2007) (unpublished decision); *Bolstridge v. Central Main Power Co.*, 621 F. Supp. 1202, 1203 (D. Maine 1985) (Carter, J.). Objective evidence is not prejudicial simply because it showed Kaminski in a bad light.

Defendants argue that the video was irrelevant because it depicted post-arrest events. The video was probative and relevant to the credibility of Jones' and the police officers' conflicting testimony about their interactions and Kaminski's abusive behavior. The video was also probative and relevant to Jones' claim of malicious prosecution of unfounded criminal charges pending for over a year until she was acquitted. The prosecution relied on misinformation supplied by both Clark and Kaminski in reckless disregard for her constitutional rights. In addition, the video was probative and relevant to damages, as it depicted an abject Jones handcuffed to a door, crying and in obvious distress.

## Conclusion

Defendants' motion for judgment as a matter of law or, alternatively, for a new trial conclusively lacks merit.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
October 3, 2011                     United States District Judge